IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn

Civil Action No. 06-cv-1595-REB-MEH

GIANT MERCHANDISING,

Plaintiff,

v.

JOHN DOES 1-100, individuals,
JANE DOES 1-100, individuals, and
XYZ COMPANY, business entity form unknown,

Defendants.
_____

TEMPORARY RESTRAINING ORDER
_____

Blackburn, J.

       This matter is before me on the **Plaintiff's Ex Parte Application for: A**

**Temporary Restraining Order; Seizure Order; and an Order to Show Cause re:**

**Preliminary Injunction** [#2], filed August 11, 2006.  The motion is granted in part and

denied in part.

       In determining whether a temporary restraining order should issue, I have

judicially noticed all relevant adjudicative facts in the file and record *pro tanto*, and I

have considered the reasons stated, arguments advanced, and authorities cited by the

plaintiff in its papers.

**JURISDICTION**

       This case arises under 15 U.S.C. §§ 1114(b) and 1125(a), which are parts of the

Lanham Trademark Act.  I have jurisdiction over this matter under 15 U.S.C. § 1121

Dockets.Justia.com

and 28 U.S.C. § 1338(a) and (b).

## SUMMARY OF FACTUAL ALLEGATIONS

The following factual summary is taken from the plaintiff's complaint and brief in support of its motion for temporary restraining order.  The plaintiff is engaged in the manufacture, distribution, and sale of various merchandise that is sold and distributed at concerts and retail stores, including t-shirts, jerseys, sweatshirts, hats, visors, buttons, posters, and program books.  A group known as the Deftones has achieved wide renown during their career in the music industry.  "Deftones" is the trade name used by the group in connection with their performing, recording, merchandising and other related goods in all aspects of the entertainment industry.  The trade neame is used to distinguish their goods and services from other such artists.  "Deftones" also is a registered trademark for use in connection with clothing, including jackets, shirts, and hats, and for use in connection with entertainment services, including live performances.  Under an agreement with the Deftones, the plaintiff possesses the exclusive right to utilize all trademarks, service marks, trade names, likenesses, and logos of the Deftones on and in connection with ang merchandise sold and offered for sale in the vicinity of the Deftones' concerts on the Deftones' present North American concert tour (Tour Merchandise).

Pervious tours by the Deftones were attended by hundreds of thousands of people.  Each of the Deftones' trademarks has developed and now possesses secondary and distinctive meaning to purchasers of Tour Merchandise.  Hundreds of thousands of such items have been sold throughout the United States, and the plaintiff and the Deftones realize substantial income form the sale of Tour Merchandise.

The plaintiff's affiant, Scott Farady, states that he is responsible for the plaintiff's merchandising and security on the current Deftones tour.  Faraday says that tours of the stature of the Deftones' current tour have a recurring problem with individuals who sell unlicensed and unauthorized Tour Merchandise near and at concert venues. These individuals are referred to as "Bootleggers," and their goods are referred to as "Unauthorized Merchandise."  The Bootleggers sell identical shirts, which indicate that the shirts are supplied from a common source.  Faraday says he and his staff have followed a substantial number of tours of various artists and they frequently have observed the same individuals selling Unauthorized Merchandise at many of the venues for each artist.  Products with similar designs have been sold by defendants throughout and artist's tour.  According to Faraday, the defendants' merchandise often is of inferior quality and often is sold at half of the price of the plaintiff's licensed merchandise.

The Deftones are scheduled to perform a concert on Tuesday, August 15, 2006, at Coors Amphitheater in Englewood, Colorado.  The Deftones have a series of scheduled performance dates at various venues throughout the U.S. following the August 15th performance.  The plaintiff seeks a temporary restraining order that will restrain the defendants from selling Unauthorized Merchandise at the August 15, 2006, Deftones performance and at subsequent concert performances by the Deftones.

As reflected in the current caption of this case, the plaintiff has not identified any particular entities – individuals or companies – who are participating in the sale of Unauthorized Merchandise.  The plaintiffs propose to determine the identity of particular bootleggers at tour events.  The plaintiff has described the difficulties it faces

in identifying particular individuals or companies who engage in such activity prior to

filing its complaint and motion for temporary restraining order.  The plaintiff seeks to

serve their complaint and a temporary restraining order on individual bootleggers at the

concert venue.

## STANDARD OF REVIEW

A temporary restraining order is extraordinary relief.  A party seeking a

preliminary injunction must show 1) a substantial likelihood that the movant eventually

will prevail on the merits; 2) that the movant will suffer irreparable injury unless the

injunction issues; 3) that the threatened injury to the movant outweighs whatever

damage the proposed injunction may cause the opposing party;  4) that the injunction, if

issued, would not be adverse to the public interest.  *Lundgrin v. Claytor*, 619 F.2d 61,

63 (10th Cir. 1980).  In addition to the foregoing factors, a party seeking a temporary

restraining order also must demonstrate clearly, with specific factual allegations, that

immediate and irreparable injury will result absent a temporary restraining order.  **FED.**

**R. CIV. P. 65(b)**.

## ANALYSIS

I find that all five of the foregoing factors weigh in favor of the plaintiff, and, thus,

in favor of the granting of a temporary restraining order.  First, the plaintiff has shown a

substantial likelihood of success on the merits of its trademark claims.  Specifically, the

facts alleged by the plaintiff demonstrate that it has an exclusive license to use the

trademarks at issue at concert performances by the Deftones, and that the defendants

actions violate the plaintiff's trademark rights.  Second, the plaintiff has demonstrated

that it likely will suffer immediate and  irreparable injury absent an injunction.  The

plaintiff's allegations and the Faraday affidavit indicate that the plaintiff is likely to suffer

damage to its good will and reputation, in part by its inability to control the quality of the

defendants' infringing products.  The bootleg sales likely are to occur in about 24

hours.  Such evidence is sufficient to demonstrate irreparable injury in the context of a

trademark claim. *See, e.g., GTE Corp. v. Wiliams*, 731 F.2d 676, 678 (10th Cir. 1984).

Third, the plaintiff has shown that these threatened injuries outweigh any damage the

proposed injunction may cause to the defendants.  Fourth, nothing in the record

demonstrates that the issuance of an injunction would be adverse to the public interest.

Fifth, as noted above, the plaintiff has demonstrated with specific factual allegations

that immediate and irreparable injury will result absent a temporary restraining order.

Finally, I conclude that this order should be granted without notice to the defendants

because of the imminence of the threatened injury and because the plaintiffs have not

yet been able to identify specifically any defendant.

Finally, FED. R. CIV. P. 65(c), provides that a restraining order shall not issue

"except upon the giving of security by the applicant, in such sum as the court deems

proper, for the payment of such costs and damages as may be incurred or suffered by

any party who is found to have been wrongfully enjoined or restrained."  I conclude that

a bond in the amount of one hundred dollars ($100) is sufficient to protect the

defendants' interests should it ultimately be determined that this injunction was granted

improvidently.

The plaintiff seeks an order that includes an authorization for law enforcement

officers to seize and impound any and all Unauthorized Merchandise bearing the

Deftones' trademarks if such merchandise is found within a ten mile vicinity of the concert venue and within six hours before to six hours after the scheduled performance.  In addition, the plaintiffs seek an order that requires individuals selling Unauthorized Merchandise who are served with a copy of this order to promptly and peaceably identify himself or herself to the process server, and that the process server be permitted to photograph, video tape or otherwise identify the defendant. Further, the plaintiffs seek an order that will be applicable to sales of Unauthorized Merchandise at Deftones concerts nationwide.  On the current record, I conclude that such relief cannot properly be granted by this court on the current record.

THEREFORE, IT IS ORDERED as follows:

1. That the **Plaintiff's Ex Parte Application for: A Temporary Restraining Order; Seizure Order; and an Order to Show Cause re: Preliminary Injunction** [#2], filed August 11, 2006, is **GRANTED** in part;

2.  That pending hearing and determination of the plaintiff's implicit request for a preliminary injunction, or the expiration of ten (10) days from the entry of this order, the defendants, their agents, servants, employees, attorneys, and any and all persons in active concert or participation with him who receive actual notice of this order by personal service or otherwise **TEMPORARILY ARE ENJOINED AND RESTRAINED** from manufacturing, distributing, and selling Infringing Merchandise, as that term is defined in this order, bearing any or all of the Deftones' trademarks within three (3) miles of the Deftones concert scheduled for Tuesday, August 15, 2006, at Coors Amphitheater in Englewood, Colorado, and from six (6) hours before to six (6) hours after the scheduled start time of the concert;

3.  That on or before 3:00 p.m. on Tuesday, August 15, 2006, the plaintiff **SHALL GIVE SECURITY** in the amount of one hundred dollars for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained;

4.  That the court shall hear the plaintiff's motion for preliminary injunction on **Monday, August 28, 2006, at 4:00 p.m. (MDT)**;

5.  That if any defendant wishes to file a response to the plaintiff's motion for temporary restraining order or request for preliminary injunction, such response shall be filed on or before **Friday, August 25, 2006, at 5:00 p.m. (MDT)**;

6.  That at the request of any defendant who is served with a summons and complaint or this Temporary Restraining Order,  the plaintiff shall provide copies of all filings made in this case prior to the date and time on which the defendant was served;

7.  That this temporary restraining order **SHALL EXPIRE**, if not sooner modified or dissolved, on August 28, 2006, at 4:30 p.m. (MDT); and

8.  That the **Plaintiff's Ex Parte Application for: A Temporary Restraining Order; Seizure Order; and an Order to Show Cause re: Preliminary Injunction** [#2], filed August 11, 2006, otherwise is **DENIED**.

Dated August 14, 2006, at 4:30 p.m. (MDT), at Denver, Colorado.

**BY THE COURT:**

**s/ Robert E. Blackburn**
**Robert E. Blackburn**
**United States District Judge**